# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

ANGELA MYERS, OSCAR
RODRIGUEZ, PAUL SUTTON,
TREVOR ADKINS, BRENT RISH,
DEREK SAMMELMAN, and
MARY MARTIN, on Behalf of
Themselves and All Others Similarly
Situated,

   Plaintiffs,

v.

NATIONAL ASSOCIATION FOR
STOCK CAR AUTO RACING,
INC., And NASCAR DIGITAL
MEDIA, LLC.,

   Defendants.
_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 6:23-cv-01540

## DEFENDANTS NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, LLC AND NASCAR DIGITAL MEDIA, LLC'S RULE 12(b)(6) MOTION TO DISMISS PLAINTIFFS' COMPLAINT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................1

BACKGROUND .........................................................................................2

ARGUMENT ..............................................................................................3

I.      PLAINTIFFS FAIL TO STATE A CLAIM. ......................................3

      A.    Plaintiffs Do Not—And Cannot—Allege That They Are "Consumers" Protected By The VPPA.......................................4

      B.    Plaintiffs Do Not—And Cannot—Allege That the NASCAR Entities Knowingly Disclosed PII In Violation Of The VPPA. .............................................................................6

            i.    Plaintiffs Fail To Allege That the NASCAR Entities Disclose PII.......................................................................6

                    1.    The FID Is Not PII. ................................................7

                    2.    Even If The FID Was PII, Plaintiffs Allege Their Own Browsers Disclosed The Information, Not the NASCAR Entities. .............12

            ii.   Plaintiffs Fail To Allege That the NASCAR Entities Knowingly Disclosed PII.................................15

      C.    Plaintiffs Do Not—And Cannot—Allege Either Defendant Is A "VTSP.".......................................................................15

II.     THE VPPA IS UNCONSTITUTIONAL AND FAILS TO PASS INTERMEDIATE SCRUTINY. .......................................................19

      A.    The Government Has No Substantial Interest In Restricting Disclosure of Identifying Information With Video Viewing Information...................................................................21

      B.    The VPPA's Requirements Do Not Materially Advance, And Are Far More Extensive Than Necessary To Serve, Any Government Interest.........................................................21

III.    THE VPPA, AS APPLIED, VIOLATES THE FIRST AMENDMENT. ..................................................................................25

CONCLUSION ..........................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................3

*Broadrick v. Oklahoma*,
413 U.S. 601 (1973) .................................................................................21, 24

*Brown v. Entertainment Merchants Assoc.*,
131 S.Ct. 2729 (2011) ...................................................................................21

*Cantu v. Tapestry, Inc.*,
No. 22-cv-1974-BAS-DDL, 2023 WL 4440662 (S.D. Cal. Jul. 10,
2023) ..............................................................................................................18

*Carroll v. Gen. Mills, Inc.*,
No. CV 23-1746 DSF, 2023 WL 4361093 (C.D. Cal. June 26,
2023) ..............................................................................................................18

*Carter v. Scripps Networks, LLC*,
No. 22-cv-2031 (PKC), 2023 WL 3061858 (S.D.N.Y. Apr. 24,
2023) ................................................................................................................4

*Central Hudson Gas & Electric Corp. v. Public Service Commission*
*of New York*,
447 U.S. 557 (1980) .......................................................................................20

*Edwards v. Learfield Communications, LLC*,
No. 1:23-cv-65 (N.D. Fla. Oct. 6, 2023), ECF No. 47, slip op. .............5, 8, 11

*Eichenberger v. ESPN, Inc.*,
No. 14–cv–463 (TSZ), 2015 WL 7252985 (W.D. Wash. May 7,
2015) ................................................................................................................9

*Ellis v. Cartoon Network, Inc.*,
803 F.3d 1251 (11th Cir. 2015) ....................................................................5, 9

i

*Gardener v. MeTV*,
    No. 22CV5963, 2023 WL 4365901 (N.D. Ill. Jul. 6, 2023) ................................6

*Ghanaat v. Numerade Labs, Inc.*,
    No. 23-CV-00833, 2023 WL 5738391 (N.D. Cal. Aug. 28, 2023) ...................11

*In re Hulu Priv. Litig.*,
    No. C 11-03764 LB, 2012 WL 3282960 (N.D. Cal Aug. 10, 2012) .................18

*Hunthausen v. Spine Media, LLC*,
    No. 3:22-cv-1970-JES-DDL, 2023 WL 4307163 (S.D. Ca. Jun. 21, 2023) ........................................................................................................................6

*IMS Health, Inc. v. Sorrell*,
    131 S.Ct. 2653 (2011) ..............................................................................20, 22

*Jefferson v. Healthline Media, Inc.*,
    No. 3:22-CV-05059-JD, 2023 WL 3668522 (N.D. Cal. May 24, 2023) ........................................................................................................................6

*Markels v. AARP*,
    No. 4:22-cv-5499-YGR, 2023 WL 6411720 (N.D. Cal., Aug. 29, 2023) ........................................................................................................................5

*In re Meta Pixel Healthcare Litig.*,
    No. 22-cv-03580, 2022 WL 17869218 (Dec. 22, 2022, N.D. Cal. 2022) ..................................................................................................13, 14

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2nd Cir. 2017) ..............................................................................23

*Mount v. PulsePoint, Inc.*,
    No. 13 CIV. 6592 (NRB), 2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016) ......................................................................................................................13

*In re Nickelodeon Consumer Privacy Litig.*,
    827 F.3d 262 (3d Cir. 2016) ...................................................................*passim*

*Perry v. Cable News Network, Inc.*,
    854 F.3d 1336 (11th Cir. 2017) ..........................................................................5

*Robinson v. Disney Online*,
    152 F. Supp. 3d 176 (S.D.N.Y. 2015) .............................................................6, 9

*Salazar v. National Basketball Ass'n.*,
    No. 1:22-cv-07935, 2023 WL 5016968 (S.D.N.Y. Aug. 7, 2023) ......................5

*Salazar v. Paramount Global d/b/a 247Sports*,
    No. 3:22-cv-00756 (M.D. Tenn. Jul. 18, 2023) ...................................................6

*Solomon v. Flipps Media, Inc.*,
    No. 22CV5508JMAJMW, 2023 WL 6390055 (E.D.N.Y. Sept. 30,
    2023) ...............................................................................................................11

*Tawam v. Feld. Ent. Inc.*,
    No. 23-CV-357-WQH-JLB, 2023 WL 5599007 (S.D. Cal. Jul. 28,
    2023) ............................................................................................................6, 18

*U.S. West, Inc. v. FCC*,
    182 F.3d 1224 (10th Cir. 1999) .......................................................................20

*In re Vizio, Inc., Consumer Priv. Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) ...........................................................16

## Statutes

18 U.S.C. § 2710(a)(3) .........................................................................................3, 6

18 U.S.C. § 2710(a)(4) ...........................................................................................15

18 U.S.C. § 2710(a)-(b) ..........................................................................................23

18 U.S.C. § 2710(b)(1) ...................................................................................6, 9, 14

18 U.S.C. § 2710(b)(2)(B) ......................................................................................22

18 U.S.C. § 2710 *et seq*. ...........................................................................................1

38 U.S.C. § 7331 .....................................................................................................22

## Other Authorities

Fed. R. Civ. P. 12(b)(6) ........................................................................................1, 3

https://www.merriam-webster.com/dictionary/business .........................................24

https://www.merriam-webster.com/dictionary/business (last accessed
    March 11, 2023) ..............................................................................................16

(https://www.merriam-webster.com/dictionary/cookie) (last visited
    June 13, 2023).....................................................................................................13

https://www.merriam-webster.com/dictionary/delivery...........................................24

(https://www.merriam-webster.com/dictionary/laser%20disc) (last
    visited August 31, 2023).....................................................................................19

https://www.merriam-webster.com/dictionary/livelihood (last
    accessed March 11, 2023)....................................................................................16

U.S. Const. amend. I ...............................................................................................19

Defendants National Association for Stock Car Auto Racing, LLC[1] ("NASCAR LLC") and NASCAR Digital Media, LLC ("NASCAR Digital") (collectively, "the NASCAR Entities") respectfully move this Court for an order dismissing Plaintiffs' Complaint with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION{ TC "INTRODUCTION" \F C \L "1" }

NASCAR LLC sanctions and produces stock car racing, with drivers, sponsors, and passionate fans all over the world attending events in the United States, Canada, Mexico, and Europe. NASCAR Digital is an affiliate of NASCAR LLC that distributes digital content designed to promote the sport of professional stock car racing.  Plaintiffs Angela Myers, Oscar Rodriguez, Paul Sutton, Trevor Adkins, Brent Rish, Derek Sammelman, and Mary Martin ("Plaintiffs") bring this one-count Complaint asserting a violation of the Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq.* ("VPPA") based on allegations that the NASCAR Entities shared Plaintiffs' Facebook User IDs ("FIDs") and video viewing information to Facebook through use of the Facebook Pixel on www.nascar.com (the "Website").

Plaintiffs' Complaint lacks crucial allegations to bring such a claim against the NASCAR Entities. Indeed, Plaintiffs allege only that they signed up for email newsletters from NASCAR Digital, not that they rented, purchased, or subscribed to any audio visual materials from NASCAR Digital—and consequently have not

---

[1] Incorrectly named as "NASCAR Inc." in the Complaint.

alleged that they are "consumers" under the VPPA. Plaintiffs also fail to plausibly allege that an *ordinary person* would be able to glean their video viewing history from the information allegedly shared through the Facebook Pixel, given that it is complex computer code that ordinary persons are not trained to read or decipher. Even more crucially, Plaintiffs' allegations state that Plaintiffs' own browsers—not the NASCAR Entities—disclosed Plaintiffs' FIDs to Facebook. What's more, Plaintiffs fail to allege that either Defendant is even a video tape service provider ("VTSP") regulated by the VPPA. Finally, the VPPA is an unconstitutional restraint on commercial speech.

## BACKGROUND{ TC "BACKGROUND" \F C \L "1" }

Plaintiffs allege NASCAR, LLC "is an American auto racing sanctioning and operating company," and NASCAR Digital "manages NASCAR's digital presence through websites, mobile apps, the official NASCAR YouTube channel, and the official fantasy league." (Compl. ¶¶ 29, 31.)  Plaintiffs allege in conclusory fashion that both Defendants are "'video tape service providers' because they create, host, and deliver hundreds of videos on the Website…" (Compl. ¶ 177.) Plaintiffs each allege that they "signed up for a NASCAR [email] newsletter" and "became a subscriber to the NASCAR [email] newsletter," and that they separately visited the Website to view content which included videos. (*Id.* ¶¶ 22-28.) Plaintiffs allege that when they visited the Website, their FID and information about video titles on the

webpages they visited was transmitted to Facebook. (Compl. ¶¶ 109, 116, 118-19.) Plaintiffs aim to represent a class of "[a]ll persons in the United States with a subscription to the Website that had their Personal Viewing Information improperly disclosed to Facebook through the use of the Facebook Pixel." (*Id*. ¶ 156.)

## ARGUMENT{ TC "ARGUMENT" \F C \L "1" }

## I.    PLAINTIFFS FAIL TO STATE A CLAIM.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court must disregard legal labels or conclusions and determine whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 & 679 (2009).

To state a claim under the VPPA, plaintiffs must allege that defendant (1) is a video tape service provider; (2) who knowingly disclosed to any person; (3) personally identifiable information; (4) concerning any consumer. *See* 18 U.S.C. § 2710(b)(1). A "video tape service provider" is defined as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. 2710(a)(4). "Personally identifiable information" is defined as "information *which identifies a person* as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. 2710(a)(3) (emphasis

added). Finally, a "consumer" is defined as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

### A.  Plaintiffs Do Not—And Cannot—Allege That They Are "Consumers" Protected By The VPPA.

Plaintiffs do not allege that they are "consumers" of video materials under the VPPA through their status as recipients of a free email newsletter. "The scope of a 'consumer,' when read with sections 2710(b)(1) and (a)(4), is cabined by the definition of 'video tape service provider,' with its focus on the rental, sale or delivery of audio visual materials." *Carter v. Scripps Networks, LLC*, No. 22-cv-2031 (PKC), 2023 WL 3061858, at *6 (S.D.N.Y. Apr. 24, 2023). Thus, "[i]n the statute's full context, a reasonable reader would understand the definition of 'consumer' to apply to a renter, purchaser or subscriber of audio-visual goods or services, and not goods or services writ large." *Id.* at *6. This interpretation is also supported by legislative history, which explains that the VPPA "is drafted 'to make clear that simply because a business is engaged in the sale or rental of video materials or services does not mean that all of its products or services are within the scope of the [law].'" *Id.* (quoting S. REP. 599, 12, 1988 U.S.C.C.A.N. 4342-1, 4342–9). The *Scripps* court dismissed a VPPA claim where the plaintiffs alleged only that they subscribed to a free email newsletter but did not "plausibly allege that their status as newsletter subscribers was a condition to accessing the site's videos, or that it enhanced or in any way affected their viewing experience." *Id.* at *2.

In line with *Scripps*, and applying the Eleventh Circuit's VPPA decisions in *Perry v. Cable News Network, Inc.* and *Ellis v. Cartoon Network, Inc.*, the Northern District of Florida recently dismissed a VPPA claim on the basis that signing up for a free email newsletter does not make a person a "consumer" under the VPPA. *See Edwards v. Learfield Communications, LLC*, No. 1:23-cv-65 (N.D. Fla. Oct. 6, 2023), ECF No. 47, slip op. at 14 (attached hereto as **Exhibit 1**) ("Plaintiffs' signing up for email updates here did not make them 'subscribers.' Signing up requires no 'durable' commitment or real exchange at all…Signing up does not grant access to any exclusive or restricted content, much less any exclusive video content."); *Perry v. Cable News Network, Inc.,* 854 F.3d 1336, 1342-43 (11th Cir. 2017) (plaintiff was not "subscriber" of video content on free CNN app merely because he paid for cable TV separate from app which provided video materials); *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1257 (11th Cir. 2015) (same). Indeed, federal courts across the country have overwhelmingly been dismissing VPPA claims where, as here, the plaintiffs allege only that they receive a free email newsletter and do not allege that they rent, purchase, or subscribe to audiovisual goods or services.[2] The same is true

---

[2] *See Markels v. AARP*, No. 4:22-cv-5499-YGR, 2023 WL 6411720, at *3 (N.D. Cal., Aug. 29, 2023) (dismissing VPPA claim for failure to allege plaintiffs were consumers where "plaintiffs do not allege that they needed to provide their information or payment to access AARP's videos. Rather, the videos are readily available to anyone who visits the site."); *Salazar v. National Basketball Ass'n.*, No. 1:22-cv-07935, 2023 WL 5016968, at *8-10 (S.D.N.Y. Aug. 7, 2023) ("Because Plaintiff does not allege that his newsletter subscription allowed him access to the videos on the NBA.com site that any member of the public would not otherwise have, Plaintiff has alleged that he was a "subscriber[ ] to newsletters, not [a] subscriber[ ] to audio visual materials.");

here, and Plaintiffs' Complaint likewise should be dismissed.

**B.**     **Plaintiffs Do Not—And Cannot—Allege That the NASCAR Entities Knowingly Disclosed PII In Violation Of The VPPA.**

Unless a VTSP has provided notice and obtained consent, it is prohibited from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015). The VPPA states that PII "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). "[T]he information disclosed by a video tape service provider must, at the very least, identify a *particular person*—not just an anonymous individual—and connect this particular person with his or her viewing history." *Robinson*, 152 F. Supp. 3d at 179.

   i.  *Plaintiffs Fail To Allege That the NASCAR Entities Disclose PII.*

---

*Tawam v. Feld. Ent. Inc.,* No. 23-CV-357-WQH-JLB, 2023 WL 5599007, at \*5 (S.D. Cal. Jul. 28, 2023) (signing up for email mailing list was "not sufficient to plausibly support the existence of a nexus between the alleged subscription and the video content at issue."); *Salazar v. Paramount Global d/b/a 247Sports*, No. 3:22-cv-00756 (M.D. Tenn. Jul. 18, 2023) ("an individual is a "subscriber" under the VPPA only when he or she subscribes to audio visual materials."); *Gardener v. MeTV*, No. 22CV5963, 2023 WL 4365901 (N.D. Ill. Jul. 6, 2023) (plaintiffs were subscribers to a website, "not subscribers to audio visual materials," as they "were free to watch or not watch [MeTV's] videos without any type of obligation, no different than any of the other 9.9 million monthly visitors to the site"); *Hunthausen v. Spine Media, LLC*, No. 3:22-cv-1970-JES-DDL, 2023 WL 4307163, at \*3 (S.D. Ca. Jun. 21, 2023) (dismissing action for failure to allege Plaintiff was a consumer because "Section 2710(b)(1) provides for an action by a renter, purchaser of subscriber of audio-visual materials, and not a broader category of consumers."); *Jefferson v. Healthline Media, Inc.*, No. 3:22-CV-05059-JD, 2023 WL 3668522, at \*3 (N.D. Cal. May 24, 2023); *Austin-Spearman*, 98 F. Supp. 3d at 671 (expressing doubt that "a plaintiff can constitute a subscriber under the VPPA if she subscribes only to a portion of the provider's services that are distinct and set apart from its provision of videos").

Plaintiffs fail to allege that the NASCAR Entities disclose PII for two distinct reasons. First, the FIDs are not PII. Second, Plaintiffs' allegations demonstrate Plaintiffs' own browsers send this information, not the NASCAR Entities.

### 1.   The FID Is Not PII.

The most basic requirement of a VPPA claim is disclosure of "the kind of information that would ***readily permit an ordinary person*** to identify a specific individual's video-watching behavior." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 267 (3d Cir. 2016) (emphasis added). Plaintiffs' Complaint includes this image as the illustrative example of the type of "disclosure" on which they base their claims:



(Compl. ¶ 99, Figure 4. *See also, e.g.*, *id.* ¶ 115, Figure 7; *id.* ¶ 118, Figure 8.) That,

on its face, is not "information that would ***readily permit an ordinary person*** to identify a specific individual's video-watching behavior." Indeed, Plaintiffs spend 193 paragraphs and 65 pages trying to explain why the purported disclosure of this complex computer code should constitute a violation. Plaintiffs even expressly allege that the Pixel "is highly technical" and that "a reasonable consumer or Website user" would not know "that Defendant was disclosing and allowing the interception of such information." (Compl. ¶ 154.)

In short, this complex computer code is not information that would readily permit an ordinary person to identify a specific individual's video-watching behavior and is, therefore, not covered by the VPPA. *See Edwards*, slip op. at 18 ("Although Plaintiffs do allege that the Gators Website transmits metadata, which contains c_user IDs and 'may' contain video titles, [citation omitted], they offer no facts explaining how Facebook accesses that metadata, why doing so does not require technical expertise, or how much metadata Facebook has to comb through to discover someone's c_user ID and the video titles.").

Even if this complex computer code could be deciphered by an ordinary person without technical expertise (and it cannot), Plaintiffs have not alleged that the Facebook ID ("FID") contained within the computer code constitutes "personally identifiable information" ("PII") under the VPPA. To the contrary, the FID is merely a static digital identifier which is not PII. The VPPA "protects personally identifiable

information that ***identifies a specific person*** and ***ties that person to particular videos that the person watched.***" *In re Nickelodeon Consumer Priv. Litig*., 827 F.3d at 285 (quoting *In re Hulu Priv. Litig*., No. C 11-03764 LB, 2014 WL 1724344, at *8 (N.D. Cal. Apr. 28, 2014) (emphasis added)).[3] Here, Plaintiffs' Complaint demonstrates that the sole information allegedly disclosed by the NASCAR Entities is not itself identifying because the information Plaintiffs allege the NASCAR Entities disclosed—the FIDs—are merely static digital identifiers.[4] (*See* Compl. ¶ 118-19 (providing "100091959850832" as an example of an FID).) Static digital identifiers, as defined in *Ellis v. Cartoon Network, Inc*. 803 F.3d 1251, 1257 (11th Cir. 2015), include such things as a unique device identifier that is "randomly generated when a user initially sets up his device and should remain constant for the lifetime of the user's device." *In re Nickelodeon Consumer Priv. Litig*., 827 F.3d at 282, n.124 (citing *Ellis*). These random strings of numbers, when viewed by an ordinary person, do not identify who that person is. Rather, static digital identifiers "fall[] even further

---

[3] *See also Robinson,* 152 F. Supp. 3d at 182 ("the most natural reading of PII suggests that it is the information actually 'disclos[ed]' by a 'video tape service provider,' 18 U.S.C. § 2710(b)(1), ***which must itself do the identifying*** that is relevant for purposes of the VPPA (literally, 'information which identifies')—***not information disclosed by a provider, plus other pieces of information*** collected elsewhere by non-defendant third parties.") (emphasis added).

[4] The *Nickelodeon* Court noted that "[n]umerous district courts have grappled with the question of whether the Video Privacy Protection Act applies to static digital identifiers" and that "[m]ost have followed the rule adopted in *In re Hulu Privacy Litigation*" wherein "[t]he court [] concluded that static digital identifiers that could, in theory, be combined with other information to identify a person do not count as 'personally identifiable information' under the Act, at least by themselves." 827 F.3d at 283 (collecting cases holding the same including *Robinson*, 152 F. Supp. 3d at 182–83; *Eichenberger v. ESPN, Inc.*, No. 14–cv–463 (TSZ), 2015 WL 7252985, at *4–5 (W.D. Wash. May 7, 2015); *Ellis*, 2014 WL 5023535, at *3).

down the spectrum [of identifiable information]" because "[t]o an average person, an IP address or *a digital code in a <u>cookie file</u> would likely be of little help in trying to identify an actual person.*" *In re Nickelodeon*, 827 F.3d at 283 (emphasis added). Although some courts have since held that an FID is PII because it can be plugged into a Facebook URL and PII *may* be found on the resulting Facebook profile, this multi-step investigative process does not make the FID, shared through the "c_user" cookie, PII, as explained by the *Nickelodeon* court.

In *In re Nickelodeon*, the type of information at issue was plaintiff's IP address, a user's browser and operating system settings, and most importantly, *a computing device's unique device identifier. Id*. at 281-82. The court explicitly held that "the expansion of privacy laws since the Video Privacy Protection Act's passage demonstrates that, whatever else 'personally identifiable information' meant in 1988, it did not encompass" such static digital identifiers. *Id*. at 286.[5] And unlike other statutes which "gave the FTC authority to expand the types of information that count as personally identifying under that law," "*[t]he Video Privacy Protection Act…does not empower an administrative agency to augment the definition of*

---

[5] The court compared the VPPA to the similar Children's Online Privacy Protection Act ("COPPA"), which was amended once by FTC rules in 2000 to define personal information to include "a persistent identifier, such as a customer number held in a cookie or a processor serial number, where such identifier is associated with individually identifiable information" and a second time in 2013 to expand the definition to include "'*any persistent identifier that can be used to recognize a user over time and across different Web sites or online services*,' including but not limited to '*a customer number held in a cookie*, an Internet Protocol (IP) address, a processor or device serial number, or unique device identifier.'" *Id*. at 287 (emphasis added).

*'personally identifiable information' in light of changing circumstances or new technologies*. The meaning of that phrase in the Act is, it would appear, *more static.*" *Id*. (emphasis added.) Further, and more importantly, *In re Nickelodeon* explained Congress's subsequent amendment of the VPPA in 2013 demonstrates Congress "was keenly aware of how technological changes have affected the original Act" and "*[d]espite this recognition*, *Congress did not update the definition of personally identifiable information in the statute.*" *Id*.  "What's more, it chose not to do so despite . . . submitted written testimony that" specifically argued for "the addition of Internet Protocol (IP) Addresses and *account identifiers* to the definition of [personally identifiable information]." *Id*. at 288 (emphasis added).

This Court should follow the detailed reasoning set forth by the *Nickelodeon* court, and recently adopted by the Northern District of Florida in *Edwards*, to hold the FIDs that Plaintiffs allege were disclosed are *not* PII because they are merely static digital identifiers that are automatically sent through a cookie file to a single company, which is nothing like the purposeful and public disclosures of actual names with video viewing history to the public at large. *See id.* at 286; *Edwards*, slip op. at 18.[6] Indeed, "[t]he classic example will always be a video clerk leaking an

---

[6] Plaintiffs do not even allege that their own public Facebook profiles actually contain personally identifying information. *See also Ghanaat v. Numerade Labs, Inc.*, No. 23-CV-00833, 2023 WL 5738391, at *4 (N.D. Cal. Aug. 28, 2023) ("plaintiffs' allegations are inadequate because they do not allege their Facebook pages contain any personal information, such as their names or email addresses"); *Solomon v. Flipps Media, Inc.*, No. 22CV5508JMAJMW, 2023 WL 6390055, at *3 (E.D.N.Y. Sept. 30, 2023) (same).

individual customer's video rental history," and "every step away from that 1988 paradigm will make it harder for a plaintiff to make out a successful claim." *In re Nickelodeon*, 827 F.3d at 286. Plaintiffs' claims should be dismissed.

> ### 2.   *Even If The FID Was PII, Plaintiffs Allege Their Own Browsers Disclosed The Information, Not the NASCAR Entities.*

Plaintiffs allege the NASCAR Entities added the Facebook Pixel to the Website "as a tracking method to collect and share Website subscribers' [information] with Facebook." (Compl. ¶ 108.) Plaintiffs allege that the Pixel causes website visitors' information to be sent to Facebook "in the form of an unencrypted and unique Facebook ID number contained in the c_user cookie included in the HTTP Request Header, which can be used to find a user's personal Facebook page." (Compl. ¶¶ 116, 126; *see also id.* ¶ 118 (explaining that Pixel transmits information within "c_user cookie").) Plaintiffs further allege "[w]hen a Facebook user logs onto Facebook, a 'c_user' cookie—which contains a user's non-encrypted Facebook User ID number (['FID'])—*is automatically created and stored on the user's device for up to a year.*" (*Id.* ¶ 93 (emphasis added).) In other words, Plaintiffs allege that the c_user cookie containing the FID was placed on their computers by Facebook when they logged into their Facebook accounts, and that the c_user cookie on their own computers transmits their FID to Facebook when they visit the Website. Plaintiffs do ***not*** allege that the NASCAR Entities ever even possess the FID—which is

something stored in the c_user cookie file on their own computers.

Plaintiffs' allegations align with how cookies generally work. For example, *In re Facebook, Inc. Internet Tracking Litig.,* explains that "[w]hen a user creates a Facebook account, more than ten Facebook cookies are placed on the user's browser. These cookies store the user's login ID [FID], and they capture, collect, and compile the referer headers from the web pages visited by the user" and "continued to capture information after a user logged out of Facebook and visited other websites." 956 F.3d 589, 596 (9th Cir. 2020); *see also In re Meta Pixel Healthcare Litig*., No. 22-cv-03580, 2022 WL 17869218 at *4 (Dec. 22, 2022, N.D. Cal. 2022) ("Cookies are 'small pieces of text used to store information on web browsers.'"); *Mount v. PulsePoint, Inc*., No. 13 CIV. 6592 (NRB), 2016 WL 5080131, at *1-2 (S.D.N.Y. Aug. 17, 2016) ("Persistent cookies, commonly called 'tracking cookies,' are designed to remain after the user moves on to a different website or even after the browser is closed. Persistent cookies are set by third parties, including advertising companies that have placed ads on the first-party website."). The dictionary defines "cookie" as "a small file or part of a file **stored on a World Wide Web user's computer**, created and subsequently read by a website server, and containing personal information (such as a user identification code, customized preferences, or a record of pages visited)." (*See* "Cookie" (df. 3) (https://www.merriam-webster.com/dictionary/cookie) (last visited June 13, 2023) (emphasis added).

Plaintiffs' own allegations, the dictionary definition of a "cookie," and case law on third-party Facebook cookies make clear that Plaintiffs' FIDs are stored ***on Plaintiffs' computers***—not by the NASCAR Entities—and subsequently transmitted to Facebook ***by Plaintiffs' own browsers***. Therefore, even if this Court were to find that FIDs are PII (which they are not), the NASCAR Entities are not the ones that transmit the FIDs to Facebook. The VPPA only applies to an entity that "discloses" PII, 18 U.S.C. § 2710(b)(1), and the NASCAR Entities cannot possibly "disclose" something that they never possess in the first place.

Plaintiffs fail to allege the NASCAR Entities disclose any other PII, such as their names, to Facebook. Rather, their claims rely solely on the alleged transmission of their FIDs to Facebook which are transmitted by Plaintiffs' own browsers ***because Plaintiffs have given Facebook consent to collect such information***. (Compl. ¶ 93 "When a Facebook user logs onto Facebook, a 'c_user' cookie . . . is automatically created and stored on the user's device"); *see In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218 at *5 ("Meta gives users the ability to control the use of information about their off-Facebook activity (such as activity on third-party websites) for advertising purposes" and "Users can 'disconnect' the off-Facebook activity that has been associated with their account—which prevents the data from being used for personalized advertising"). Because Plaintiffs' specific allegations support that Plaintiffs' FIDs are transmitted by their own browsers, which they

consented to—not by the NASCAR Entities—and because they do not allege that the NASCAR Entities disclose any other PII to Facebook, Plaintiffs fail to allege the NASCAR Entities disclose PII.

> ii. *Plaintiffs Fail To Allege That the NASCAR Entities Knowingly Disclosed PII.*

Beyond Plaintiffs' failure to allege NASCAR disclosed PII at all, they also do not allege that the NASCAR Entities had any way to know whether they, or any other user, had an FID, much less what those FIDs were, or whether Plaintiffs set their browsers to allow Facebook cookies. Therefore, the Complaint does not and cannot plausibly assert that the NASCAR Entities *knowingly* disclosed their FID, let alone their PII, to Facebook.

## C. <u>Plaintiffs Do Not—And Cannot—Allege Either Defendant Is A "VTSP."</u>

A "video tape service provider" ("VTSP") is defined as "any person, ***engaged in the business***, in or affecting interstate or foreign commerce, ***of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials*** . . . ." 18 U.S.C. § 2710(a)(4) (emphasis added). The Complaint contains no allegations regarding "prerecorded video cassette tapes," nor does it allege either defendant is "engaged in the business" of rental, sale or delivery of "similar audio-visual materials." 18 U.S.C. § 2710(a)(4). These pleading deficiencies cannot be fixed by amendment because defendants' business does not fall within the statutory language.

15

*First*, Plaintiffs have not alleged the "engaged in the business" element. "Business" is defined as "a usually commercial or mercantile activity engaged in as a means of livelihood." *See* "business" (def. 1a), https://www.merriam-webster.com/dictionary/business (last accessed March 11, 2023). "Livelihood" is defined as "means of support or subsistence." *See* "livelihood" (def. 1), https://www.merriam-webster.com/dictionary/livelihood (last accessed March 11, 2023). Thus, to be "engaged in the business" of a particular activity, that activity must be the company's "means of support or subsistence." *See In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017) (to be "engaged in the business…of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials," "the defendant's product must not only be substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose"). In other words, delivering video content must be "a focus of the defendant's work" and businesses which are only "peripherally or passively involved in video content delivery do not fall within the statutory definition of a video tape service provider." *Id.* at 1221-22.

Plaintiffs do not allege that either defendant's business is substantially involved in the conveyance of video content and significantly tailored to that purpose, or that renting, selling, or delivering videos is a focus of either defendant's work. To the contrary, Plaintiffs themselves describe defendant NASCAR, LLC as

"an American auto racing sanctioning and operating company," and defendant NASCAR Digital as a company that "manages NASCAR's digital presence through websites, mobile apps, the official NASCAR YouTube channel, and the official fantasy league." (Compl. ¶¶ 29, 31.)  In other words, by Plaintiffs' own allegations, the focus of NASCAR, LLC's work is sanctioning and operating auto races, while the focus of NASCAR Digital's work is digital marketing.[7]

Plaintiffs go on to allege in conclusory fashion that both defendants are "'video tape service providers' because they create, host, and deliver hundreds of videos on the Website" (Compl. ¶ 177)—but this conclusory allegation is contradicted by Plaintiffs' own more specific allegations that renting, selling, or delivering videos is ***not*** the focus of either defendant's work. Indeed, if an entity could qualify as a VTSP merely because it has a website which contains videos (among other content), virtually every single individual or entity with a modern website—for-profit companies, non-profit organizations, educational institutions, government agencies, Tik Toc users, etc.—could be swept within this definition. Such an interpretation would be absurd and is not in line with the statutory language.

As several courts have held, simply making videos available on a free,

---

[7] Plaintiffs allege that a different entity, NASCAR Media Group, LLC, "creates, edits, and distributes NASCAR-related audio visual content, including clips, news shorts, podcasts, radio broadcasts, interviews, and creative content." (Compl. ¶ 30.) Although paragraph 30 of the Complaint refers to this entity as a "defendant," this entity has not actually been named as a defendant in this case.

publicly available website, as an incidental medium to market the defendant's business, does not make a business a VTSP. *See Cantu v. Tapestry, Inc.*, No. 22-cv-1974-BAS-DDL, 2023 WL 4440662, at *8 (S.D. Cal. Jul. 10, 2023) (rejecting claim against fashion brand that was based on a bare allegation that the brand "monetize[ed] instances in which consumers watch[ed] videos" on its website); *Carroll v. Gen. Mills, Inc.*, No. CV 23-1746 DSF (MRWx), 2023 WL 4361093, at *3 (C.D. Cal. June 26, 2023) (rejecting claim against food manufacturing company that "provide[d] videos [on its websites] as a peripheral part of its marketing strategy"); *Tawam v. Feld Ent. Inc.*, No. 23-CV-357-WQH-JLB, 2023 WL 5599007, at *4 (S.D. Cal. July 28, 2023) (allegations that "Plaintiffs viewed two videos on Defendant's website and that '[p]art of Defendant's business involves increasing its brand presence via the use of videos' and 'monetizing videos'" "did not support an inference that the videos viewed by Plaintiffs are more than peripheral to Defendant's business or that Defendant's website is significantly tailored to the purpose of conveying those videos.").

**Second**, Plaintiffs likewise fail to allege the "similar audio-visual materials" element. "Congress's concern with privacy and protecting the confidentiality of an individual's choices is relevant context to the Senate Report's discussion of 'similar audio visual materials, such as laser discs, open-reel movies, and CDI technologies.'" *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2012 WL 3282960, at

*6 (N.D. Cal Aug. 10, 2012) (citing S.Rep. No. 100–599 at 12). The "similar" materials contemplated by Congress were the hours-long video recordings such as motion pictures ("open-reel movies") made available at the typical brick-and-mortar stores that existed when Congress drafted the VPPA. *See also* laser disc (def. 1) (https://www.merriam-webster.com/dictionary/laser%20disc) (last visited August 31, 2023) (defined as, "one containing a video recording (as of a motion picture)." Such types of "audio visual materials" differ greatly from the racing clips, analyses, and interviews on the Website today. And Plaintiff does not allege that Congress considered, yet alone intended, to regulate businesses that distribute such materials.

## II.   THE VPPA IS UNCONSTITUTIONAL AND FAILS TO PASS INTERMEDIATE SCRUTINY.

The VPPA is facially unconstitutional because it is a vague and overbroad restraint on commercial speech. Indeed, lawsuits like this one are only being filed because several terms are undefined in the VPPA, prompting plaintiffs to bring suit even if just a *single video* is placed on a website and viewed—which has led to an explosion in VPPA lawsuits in the last year and a half. [8]

The First Amendment states, "Congress shall make no law … abridging the freedom of speech." U.S. Const. amend. I. Restrictions on access to information in

---

[8] Indeed, since 2022 alone, more than 100 complaints alleging violations of the VPPA have been filed against defendants from all sectors and industries, which simply provide videos on their websites, including Hallmark Cards, Intuit, Gannett Company, Weight Watchers, The Philadelphia Inquirer, the National Football League (d/b/a the NFL), Major League Baseball Advanced Media L.P., the National Basketball Association, Equifax, and La-Z-Boy.

private hands, such as customer data, violate the First Amendment. *See IMS Health, Inc. v. Sorrell*, 131 S.Ct. 2653, 2671 (2011) (holding Vermont statute violated First Amendment where the statute purported to restrict pharmacies from selling retained information about drug prescribing habits of doctors to pharmaceutical companies for marketing purposes.); *U.S. West, Inc. v. FCC*, 182 F.3d 1224, 1224 (10th Cir. 1999)  (holding that an FCC regulation violated the First Amendment where it restricted telecommunication carriers from using customer information "that is made available to the carrier by the customer solely by virtue of the carrier-customer relationship" because it made speech more difficult by limiting the ability of carriers to target their speech to a particular audience).

Like the information at issue in *IMS Health* and *U.S. West*, the information at issue in this case – "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider" – is commercial speech. As such, any restriction on that speech must meet three conditions in order to survive: (1) the government must have a "substantial interest in regulating the speech," (2) the regulation must "directly and materially advance[] that interest," and (3) the regulation must be "no more extensive than necessary to serve the interest." *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 566 (1980). In addition, the VPPA's "language may not be unconstitutionally vague or its prohibitions too broad in their

sweep, failing to distinguish between conduct that may be proscribed and conduct that must be permitted." *Broadrick v. Oklahoma*, 413 U.S. 601, 607 (1973). The VPPA does not meet any of these conditions.

A. **The Government Has No Substantial Interest In Restricting Disclosure of Identifying Information With Video Viewing Information.**

The government does not have a "substantial interest" in restricting disclosure of "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710. As the Supreme Court has explained, "without persuasive evidence that a novel restriction on content is part of a long (if heretofore unrecognized) tradition of proscription, a legislature may not revise the judgment [of] the American people, embodied in the First Amendment, that the benefits of its restrictions on the Government outweigh the costs." *Brown v. Entertainment Merchants Assoc.*, 131 S.Ct. 2729, 2734 (2011). There is no "persuasive evidence" that restrictions on this information imposed under Section 2710 are "part of a long tradition of proscription." *Id.* To the contrary, the history of movies began with movie-goers attending movie showings in public theaters.

B. **The VPPA's Requirements Do Not Materially Advance, And Are Far More Extensive Than Necessary To Serve, Any Government Interest.**

Further, even if the government does have a "substantial" interest in

21

preventing the disclosure of video viewing information, "[t]here must be a 'fit between the legislature's ends and the means chosen to accomplish those ends.'" *IMS Health*, 131 S. Ct. at 2668 (quoting *Bd. of Trustees of State Univ. of New York v. Fox,* 492 U.S. 469, 480 (1989)). "These standards ensure … that the State's interests are proportional to the resulting burdens placed on speech…" *Id.*

The consent requirements in § 2710(b)(2)(B)(i)-(iii)[9] fail these standards. The very existence of § 2710(b)(2)(B) confirms that the government's purported privacy interest is not limitless, but rather ends once "informed, written consent" is obtained. Congress could have, and should have, stopped there: the phrasing "informed, written consent … ***that*** …" implicitly acknowledges that informed consent can be obtained in many ways, rather than definitionally requiring the elements set forth in subsections (i)-(iii). 18 U.S.C. § 2710(b)(2)(B) (emphasis added.) Indeed, elsewhere in the federal code, "implied consent" stands on its own as a principle subject to rulemaking, *see, e.g.*, 38 U.S.C. § 7331, underscoring the lack of a single definition.

But the VPPA does not stop at informed consent. Instead, § 2710(b)(2)(B)(i)-(iii) creates onerous and arbitrary specifications that do not materially advance the

---

[9] Section 2710(b)(2)(B) requires "informed, written consent (including through an electronic means using the Internet) of the consumer that – (i) is in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; (ii) at the election of the consumer that—(I) is given at the time the disclosure is sought; or (II) is given in advance for a set period of time, not to exceed 2 years or until consent is withdrawn by the consumer, which is sooner; and (III) the video tape service provider has provided an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." 18 U.S.C. § 2710(b)(2)(B).

purported government interests and go far beyond the prevailing understanding of enforceability of online Terms and Conditions or Privacy Policies. *See, e.g.*, *Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2nd Cir. 2017) (explaining that "clickwrap" agreements are "routinely" enforced). Unlike the VPPA, the ample case law regarding enforceability of website terms does not prioritize "distinct and separate" consent, temporal limitations on consent, or providing opportunity for withdrawal (*see id.*), because the incremental benefits to consumers of such procedural obligations are minimal. Indeed, subsections (i)-(iii) provide users with no additional information necessary to make an informed decision regarding having personal usage information shared with third parties; they only create materially burdensome—and free speech-chilling—compliance requirements.

The recent explosion of VPPA litigation is due to the VPPA's overbroad and vague restriction on "any person, engaged in the *business* . . . of rental, sale or *delivery* of prerecorded video cassette tapes or similar audio visual materials" from knowingly disclosing "to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(a)-(b) (emphasis added). Plaintiffs in cases such as this one are advocating for the statute to apply to a broad range of entities that should not be regulated by the VPPA, which has caused, and will continue to cause, other entities not before this Court to refrain from constitutionally protected speech. As the Supreme Court has held, a statute is

overbroad and, "[l]itigants are permitted to challenge a statute . . . because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick*, 413 U.S. at 612.

The recent onslaught of lawsuits is possible only because the language of the VPPA is so vague and overbroad that plaintiffs are interpreting the VPPA to allow suit even if just a *single video* is placed on a website and viewed. The words "business" and "delivery" are undefined in the statute, but their dictionary definitions are overly broad for the statutory purpose.[10] Based on these overly broad, undefined words, plaintiffs have stretched Congress' intention to regulate video tape service providers, such as the video store rental companies contemplated in the legislative history, to absurd conclusions. The number and breadth of VPPA claims brought against companies from all industries, described *supra* fn.7, proves the language of the VPPA "fail[s] to distinguish between conduct that may be proscribed and conduct that must be permitted" and it likely "cause[s] others not before the court to refrain from constitutionally protected speech." *Broadrick,* 413 U.S. at 612. This is because, based on a definition of "video tape service provider" as a

---

[10] "Business" is defined as "a usually commercial or mercantile activity engaged in as a means of livelihood" or "a commercial or sometimes an industrial enterprise" ("business" (def. 1a, 1b), https://www.merriam-webster.com/dictionary/business), while "delivery" is defined as "the act or manner of delivering something." *See* "delivery" (def. 1), https://www.merriam-webster.com/dictionary/delivery.

"business" that "rents, sells, or delivers" audio visual materials, persons in any and all sectors, including restaurants, greeting card companies, and retail stores, may refrain from otherwise legal speech due to fear that they will fall under the VPPA's purview, simply because they operate a website that contains video content.

## III.   THE VPPA, AS APPLIED, VIOLATES THE FIRST AMENDMENT.

The VPPA, as applied to the NASCAR Entities, is far too vague and overbroad. If the VPPA is interpreted as Plaintiffs are advocating, the NASCAR Entities are potentially subject to the VPPA as a "video tape service provider" and prohibited from sharing otherwise legal commercial information with third parties, as is common in all commercial industries, even though the NASCAR Entities are nothing like the "video rental store" contemplated by Congress when enacting the VPPA. Rather than make clear the types of entities regulated by the statute, the statute is being interpreted by plaintiffs to allow for regulation of any "business" that "delivers" audio visual materials.

### CONCLUSION{ TC "CONCLUSION" \F C \L "1" }

For the foregoing reasons, the NASCAR Entities respectfully requests that this Court dismiss Plaintiffs' Class Action Complaint with prejudice.

### <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

The NASCAR Entities certify that they have conferred with Plaintiffs regarding this motion via both phone and email, and Plaintiffs oppose this motion.

Dated: October 24, 2023

Respectfully submitted,

*/s/Joel Griswold*

Joel Griswold
Florida Bar No. 1008827
BAKER & HOSTETLER LLP
200 S. Orange Avenue
Suite 2300
Orlando, Florida 32801-3432
(407) 649-4088
jcgriswold@bakerlaw.com

*Attorneys for Defendants National*
*Association for Stock Car Auto Racing LLC*
*and NASCAR Digital Media, LLC*

26

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing document was electronically filed on October 24, 2023 with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record. I further certify that a true and correct copy of the foregoing document was served via certified mail to the following:

    Merrick B. Garland
    Attorney General for the United States
    U.S. Department of Justice
    950 Pennsylvania Avenue, NW
    Washington, DC 20530-0001


    */s/Joel Griswold*